UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHANA ARMSTRONG,
    *Plaintiff*,

v.

AURA HEALTHCARE, LLC d/b/a
MOUNTAINSIDE TREATMENT CENTER,
    *Defendant.*

No. 3:24-cv-723 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Shana Armstrong ("Ms. Armstrong" or "Plaintiff") has sued Aura Healthcare ("Mountainside" or "Defendant") and alleges unlawful discrimination on the basis of disability ("Count One") and unlawful retaliation ("Count Two") both in violation of the American with Disabilities Act ("ADA"), and unlawful discrimination on the basis of disability ("Count Three") and unlawful retaliation ("Count Four") both in violation of the Connecticut Fair Employment Practices Act ("CFEPA"). Amended Complaint, ECF No. 18 (Sept. 14, 2024) ("Compl.").

Mountainside has filed a motion to dismiss Ms. Armstrong's Amended Complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to Dismiss Amd. Compl., ECF. No. 18 (Sept. 27, 2024) ("Mot.").

For the following reasons, the motion to dismiss is **GRANTED** in part and **DENIED** in part.

Ms. Armstrong's hostile work environment claims in Count One under the ADA and Count Three under the CFEPA are **DISMISSED** without prejudice.

To the extent that the deficiencies identified in the factual allegations in Ms. Brown's Amended Complaint can be remedied, she may move for leave to amend the Complaint by **February 28, 2025**.

If no proposed amended pleading is filed by **February 28, 2025**, or if the motion for leave to amend demonstrates that amending would be futile, the Court will dismiss the hostile work environment claim from Count One and Count Three of Ms. Armstrong's Amended Complaint with prejudice.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **Factual Allegations**

Ms. Armstrong alleges that, in 2021, she was hired by Mountainside as a Licensed Residential Clinician/Therapist, a position for which she was allegedly qualified. Compl. ¶¶ 11–13.

Ms. Armstrong alleges that although Mountainside's job posting did not require that applicants be vaccinated for COVID-19, when she was hired, she was asked whether she had received the COVID-19 vaccine. *Id.* ¶¶ 14, 16.

Ms. Armstrong alleges that she told Mountainside that she was not vaccinated and that she had asthma and was worried about reports of people suffering from acute asthma attacks after receiving the vaccine. *Id.* ¶¶ 15, 17.

Ms. Armstrong alleges that she is disabled and notified Mountainside and multiple co-workers about her asthma and medical conditions and that Mountainside perceived her to be disabled and perceived her asthma to substantially limit her ability to breathe. *Id.* ¶¶ 22–25.

Ms. Armstrong alleges that on or around May 28, 2021, she was having lunch with coworkers and Senior Supervisor Ariana Cardozo and that while at that lunch Ms. Cardozo stated that "people who did not get the vaccine were idiots," and after that remark Ms. Cardozo turned to Ms. Armstrong and told her, "Oh, I forgot you don't have it." *Id.* ¶¶ 29–32. Ms.

Armstrong alleges that she was "humiliated by Cardozo's disclosure [of her vaccine status] and being called an idiot." *Id.* ¶ 37.

The next week, Ms. Armstrong alleges that she told her supervisor, Jacqueline Tanner about Ms. Cardozo's comments. *Id.* ¶ 38. Ms. Armstrong alleges that she "reasonably perceived such comment by Cardozo to be disability discrimination as Armstrong's choice to not get the Covid-19 vaccination was due to her asthma." *Id.* Ms. Armstrong alleges that she told Ms. Tanner that she received negative comments from other employees as well. *Id.* ¶ 39. Ms. Armstrong alleges that Ms. Tanner told her that Ms. Cardozo's comments were not appropriate and asked Ms. Armstrong if she would like her to speak to Ms. Cardozo about the comments. *Id.* ¶¶ 41, 42. Ms. Armstrong alleges that she told Ms. Tanner that she did not want her to talk to Ms. Cardozo but did want the incident documented. *Id.* ¶ 45.

Ms. Armstrong alleges that, in November 2021, Director Lisa Westerson laughed at her and called her "hyper verbal," which she perceived to be offensive. *Id.* ¶ 51. Ms. Armstrong alleges that she reported Ms. Westerson's comment and laughter to Ms. Tanner and asked Ms. Tanner to document her report about Ms. Westerson. *Id.* ¶¶ 53, 54.

Ms. Armstrong alleges that she was in a probationary period for six months in which she met with Ms. Tanner weekly for a supervision session which Ms. Tanner noted and sent to Ms. Armstrong to countersign after their weekly meeting. *Id.* ¶¶ 46–49. Ms. Armstrong alleges that, at the end of November 2021, she completed her probationary period and at the end of the year Ms. Tanner sent Ms. Armstrong all of her weekly supervision logs as part of her end of year review for his Ms. Armstrong to sign off on. *Id.* ¶¶ 55, 56, 63.

Ms. Armstrong alleges that she found discrepancies in some of the logs and was concerned that none of her reports of Ms. Cardozo or Ms. Westerson's conduct was included in

3

the logs. *Id.* ¶¶ 64, 65. Ms. Armstrong alleges that when she told Ms. Tanner that neither of the reports were documented, Ms. Tanner told her that neither report was documented because they spoke about them. *Id.* ¶ 66. Ms. Armstrong alleges that she signed off on the majority of the supervision logs but asked that Ms. Tanner update the logs to reflect the reports that she had made. *Id.* ¶ 67. Ms. Armstrong alleges that while Ms. Tanner updated the logs to reflect that Armstrong made a report about Ms. Cardozo and Ms. Westerson's conduct the logs did not include accurate information as to the details of the conduct. *Id.* ¶ 68. Ms. Armstrong alleges that she reviewed the updated logs and asked Ms. Tanner to include the specific language of Ms. Cardozo's comment. *Id.* ¶ 69. Ms. Tanner finally updated the logs to include accurate information and in early 2022, Armstrong finally signed off on the updated, accurate logs. *Id.* ¶¶ 70, 71.

Ms. Armstrong alleges that, on January 18, 2022, Ms. Westerson informed her that she was being let go. *Id.* ¶¶ 72, 74, 78. Ms. Armstrong alleges that when she asked Ms. Westerson why she was being let go, Ms. Westerson told her that Mountainside could let anyone go at any time, since Connecticut was an at-will state. *Id.* ¶¶ 78, 79.

Ms. Armstrong alleges that Ms. Westerson's stated reason for her termination is a pretext for disability discrimination and retaliation and that Mountainside made a decision to terminate her after she requested that Ms. Tanner submit accurate supervision logs that documented the disability discrimination that occurred and after she made a documented report of disability discrimination. *Id.* ¶¶ 82–84. Ms. Armstrong alleges that there is a causal connection between her documented report of discrimination and her termination. *Id.* ¶ 86.

4

### B. Procedural History

On April 17, 2024, Ms. Armstrong filed her Complaint in this case. Complaint, ECF No. 1.

On August 5, 2024, Mountainside filed its motion to dismiss the Complaint. Mot. to Dismiss, ECF No. 14.

On September 14, 2024, Ms. Armstrong filed her Amended Complaint. Compl.

On September 27, 2024, Mountainside filed its motion to dismiss Ms. Armstrong's Amended Complaint. Mot.

On October 15, 2024, Ms. Armstrong filed her opposition to Mountainside's motion to dismiss the Amended Complaint. Opp'n to Mot. to Dismiss, ECF No. 19 ("Opp'n").

On November 8, 2024, Mountainside filed its reply to Ms. Armstrong's opposition to Mountainside's motion to dismiss the Amended Complaint. Reply to Opp'n to Mot. to Dismiss, ECF No. 22 ("Reply").

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III.  DISCUSSION

In its motion to dismiss, Mountainside argues that Ms. Armstrong's Amended Complaint should be dismissed in its entirety for failure to state a claim upon which relief may be granted.

The Court will address each count in turn.

### A. Counts One and Three: The Disparate Treatment (And Hostile Work Environment) Claims

In order to sustain a claim of disparate treatment at the motion to dismiss stage under the ADA, a plaintiff must allege that "(1) [the Defendant] is covered by the ADA; (2) [she] suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [she] was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) [she] suffered an adverse employment action because of [her] disability or perceived disability." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005).[1]

In order to state an actionable hostile work environment claim, a plaintiff must allege that he or she was subjected to harassment that was severe or pervasive enough "to alter the conditions of the victim's employment and create an abusive working environment, and ... that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citations and internal quotation marks omitted). The plaintiff must demonstrate that the workplace atmosphere was "permeated with 'discriminatory intimidation, ridicule, and insult' ... that is 'sufficiently severe or pervasive to alter the conditions

---

[1] A disparate treatment claim—and employment discrimination claims more broadly—under the CFEPA are interpreted under the same analysis as federal employment discrimination claims and thus, the Court will analyze Ms. Armstrong's ADA claims and CFEPA claims concurrently using the ADA framework. *See Craine v. Trinity College*, 791 A.2d 518 n.6 (Conn. 2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both."); *Hopkins v. New England Health Care Emps. Welfare Fund*, 985 F. Supp. 2d 240, 255 (D. Conn. 2013) ("Discriminatory claims brought under CFEPA, Conn. Gen.Stat. § 46a–60 et seq. are construed similarly to ADA claims, with Connecticut courts reviewing federal precedent concerning employment discrimination and retaliation for guidance in enforcing the CFEPA.").

of the victim's employment and create an abusive working environment ....'" *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

"Courts look at all circumstances to ascertain whether an environment is sufficiently hostile or abusive to support a claim." *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001). These circumstances include factors such as the frequency of the discriminatory conduct; the severity of the discriminatory conduct; whether the conduct is physically threatening or humiliating (as opposed to merely offensive); and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23. These factors are to be evaluated holistically, and no single one is required. *Id.*

Furthermore, the test for sufficiency of a hostile work environment claim has both subjective and objective prongs: the plaintiff must subjectively perceive the environment to be abusive, and the discriminatory conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment .... An environment that a reasonable person would [not] find hostile or abusive ... is beyond Title VII's purview." *Id.* at 21.

"In order for [discriminatory] comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of [discriminatory] enmity, meaning that instead of sporadic [discriminatory remarks], there must be a steady barrage of opprobrious [discriminatory] comments. Case law within this Circuit establishes that sporadic comments, slurs, and jokes akin to that which plaintiff experienced do not satisfy this standard." *Fletcher v. ABM Bldg. Value*, No. 14 CIV. 4712 (NRB), 2018 WL 1801310, at *23 (S.D.N.Y. Mar. 28, 2018) (internal quotation marks and citations omitted) (collecting cases) (finding that remarks like "black bitch," "fucking idiot," "these fucking people," and unresponsive complaints

were not enough to sustain a hostile work environment claim), *aff'd*, 775 F. App'x 8 (2d Cir. 2019); *Augustin v. The Yale Club of New York City*, 274 F. App'x 76, 77 (2d Cir. 2008) ("[E]pisodes of name-calling, inappropriate behavior by a supervisor, and other perceived slights, which, however regrettable, do not constitute a hostile work environment even if taken as true.") (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 607–08 (2d Cir.2006)).

### 1. The Disparate Treatment Claim

Mountainside argues that Ms. Armstrong's disability discrimination claims should be dismissed because (1) the failure of the Defendant to produce her weekly supervision logs was not an adverse employment action, and (2) there are no allegations suggesting that Ms. Cardozo's or Ms. Westerson's alleged comments were due to her disability, were directed at her, or that the Defendant representatives making the decision to fire her knew that she had asthma. Mot. at 15–16.

Ms. Armstrong responds that (1) she "suffered an adverse employment action because of her disability when she endured a hostile work environment from coworkers in connection with her disability and her employment was unexpectedly terminated on January 18, 2022 after she complaint about such discrimination," and (2) that the "Defendant disclosed Plaintiff's confidential medical information regarding her disabilities to Defendant employees, including that Plaintiff did not get the COVID-19 vaccine, which subjected Plaintiff to disparate treatment. . . . As a result of such disparate treatment, Plaintiff suffered additional adverse employment actions, in connection with her asthma disability, including, but not limited to failing to produce Plaintiff's weekly supervision logs to Plaintiff while she was in her probationary period, and termination of Plaintiff on January 18, 2022." Opp'n at 15–16, 17.

In reply, Mountainside argues that "being subject to a hostile work environment is not considered adverse employment action" as "courts analyze claims for disability discrimination separately from claims for disability harassment based on a hostile work environment," and because "Plaintiff's asthma clearly played no role whatsoever in her termination," Ms. Armstrong has failed to state a claim for disability discrimination. Reply at 5–7.

The Court disagrees.

Ms. Armstrong easily meets the first three prongs of a disability discrimination claim. Ms. Armstrong alleges that the Defendant "employs more than fifteen (15) employees." Compl. ¶ 10; 42 U.S.C. § 12111(2), (5)(A) ("The term "covered entity" means an employer . . . . The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees . . ."). She alleges that she is disabled and has been diagnosed with chronic asthma that limits her major life activities which satisfies the ADA definition. Compl. ¶¶ 18–26, 125–130; 42 U.S.C. § 12102(1)–(1)(A) ("The term "disability" means, with respect to an individual— . . . a physical or mental impairment that substantially limits one or more major life activities of such individual.").[2] She alleges that she "was at all times qualified for the position she held which is evidenced by her 2021 year-end review where Plaintiff met or exceeded expectations for a majority of the review categories." Compl. ¶ 98.

As to the fourth prong of the disability discrimination analysis, while Mountainside argues that a hostile work environment or a failure to produce weekly supervision logs may not be an adverse employment action, the Court need not resolve that issue because Ms. Armstrong

---

[2] While "the CFEPA's definition of physical disability is broader than the ADA's," *Beason v. United Techs. Corp.*, 337 F.3d 271, 278 (2d Cir. 2003), because Ms. Armstrong's asthma is covered under the more limited ADA definition, she is also covered under the CFEPA definition of disability as well. *See, e.g.*, *Hopkins v. New England Health Care Emps. Welfare Fund*, 985 F. Supp. 2d 240, 256 (D. Conn. 2013) ("Because the Funds have agreed that Hopkins was disabled under the narrower ADA for purposes of summary judgment . . . this difference does not affect the court's analysis of the CFEPA claims.").

has alleged an adverse employment action: her termination. *See* Compl. ¶ 110, 147 ("Plaintiff suffered adverse employment actions . . . termination of Plaintiff on January 18, 2022."); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) ("an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination.") (internal citations omitted); *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) ("A plaintiff sustains an adverse employment action if [they] endure[] a materially adverse change in the terms and conditions of employment. . . . A materially adverse change might be indicated by a termination of employment") (internal citations omitted).

Under the fourth prong, the adverse employment action must be "because of [her] disability or perceived disability." *Capobianco*, 422 F.3d at 56. While Mountainside argues that Ms. Armstrong's asthma did not play a role in her termination, in her Complaint, Ms. Armstrong alleges that she "suffered adverse employment actions, in connection with her asthma disability," Compl. ¶ 110, 147 and that "[t]he adverse employment actions suffered by Plaintiff are causally connected to her disability due to the temporal proximity of Defendant being informed by Plaintiff's about her disability and the adverse employment actions." *Id.* ¶ 111, 148. This allegation is further supported by her allegations that the Defendant "discriminat[ed] against Plaintiff, retaliate[ed] against Plaintiff, permitt[ed] employees to mock Plaintiff's vaccination decision related to her medical condition, [and] subject[ed] Plaintiff to disparate treatment on the basis of disability." *Id.* ¶ 113, 150.

Whether these allegations do, in fact, create a genuine issue of material fact is for another day. *See Mauro v. New York City Dep't of Educ.*, No. 21-2671, 2022 WL 17844438, at *1 (2d Cir. Dec. 22, 2022) ("a plaintiff bears only a minimal burden of alleging facts suggesting an

inference of discriminatory motivation. . . . We have often vacated improper dismissals in discrimination cases where courts apply overly stringent pleading standards, cautioning against imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage.") (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85, 87 (2d Cir. 2015), and *Doe v. Columbia Univ.*, 831 F.3d 46, 55 n.8 (2d Cir. 2016)). For now, they suffice for purposes of her disparate treatment claims, and any characterization of the facts allegedly underlying these claims are more prudently addressed at the summary judgment stage, following the close of discovery. *Cf. Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (noting the "care exercised in this Circuit to avoid hastily dismissing complaints of civil rights violations"); *see also Dietz v. Bouldin*, 579 U.S. 40, 47 ("district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases").

Accordingly, the motion to dismiss will be denied as to the disparate treatment claims in the First and Third Counts of the Complaint.

      2. *The Hostile Work Environment Claim*

Mountainside argues that Ms. Armstrong cannot properly allege a hostile work environment claim because (1) Ms. Cardozo and Ms. Westerson's comments were not severe nor pervasive enough to establish a hostile work environment; (2) those comments had nothing to do with her asthma; and (3) Ms. Armstrong did not subjectively perceive those comments to be abusive. Mot. at 16–18.

Ms. Armstrong responds that (1) Ms. Cardozo and Ms. Westerson's name-calling is enough to constitute a hostile work environment; (2) those comments ere due to her not getting the COVID-19 vaccine because of her asthma; and (3) she did perceive those comments to be offensive and classify as disability discrimination. Opp'n at 19.

In reply, Mountainside argues that (1) "there are zero allegations in the Amended Complaint establishing that [Ms. Cardozo and Ms. Westerson's comments] had anything to do with Plaintiff's asthma," and (2) "two isolated incidents of name-calling (that were entirely unrelated to Plaintiff's asthma) do not rise to the level of abuse required to sustain a claim for hostile work environment." Reply at 7, 9.

The Court agrees.

Ms. Armstrong alleges that she was subjected to "an objectively hostile or abusive work environment," as she was "subjected to hostile remarks by Mountainside employees and management, such as being called an "idiot" and "hyper verbal" and laughing at her, due to Plaintiff not getting the Covid-19 vaccine because of her asthma diagnosis," and then when she "reported this disability discrimination and these hostile remarks," the "Defendant took no corrective action to remedy the disability discrimination and hostile acts by Mountainside management and employees towards Plaintiff," and the "Defendant failed to immediately document Plaintiff's complaints of disability discrimination and the hostile work environment after she made them." Compl. ¶ 101–06, 138–43.

But "[c]ase law within this Circuit establishes that sporadic comments, slurs, and jokes . . . do not satisfy this [hostile work environment] standard," *see Fletcher v. ABM Bldg. Value*, No. 14 CIV. 4712 (NRB), 2018 WL 1801310, at *23 (S.D.N.Y. Mar. 28, 2018) (collecting cases) (finding that remarks like "black bitch," "fucking idiot," "these fucking people," and unresponsive complaints were not enough to sustain a hostile work environment claim) *aff'd*, 775 F. App'x 8 (2d Cir. 2019); *Augustin v. The Yale Club of New York City*, 274 F. App'x 76, 77 (2d Cir. 2008) ("episodes of name-calling, inappropriate behavior by a supervisor, and other perceived slights, which, however regrettable, do not constitute a hostile work environment even

if taken as true") (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 607–08 (2d Cir.2006).

Accordingly, in the absence of additional allegations to support her hostile work environment claim, the motion to dismiss will be granted as to the hostile work environment claims in the First and Third Counts of the Complaint.

### B. Counts Two and Four: The Retaliation Claim

In order to state an actionable retaliation claim, "a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)).

Mountainside argues that (1) Ms. Armstrong's complaints about Ms. Cardozo and Ms. Westerson's comments do not count as a protected activity because the comments were not about her asthma and she did give any indication that she was protesting discrimination when she complaint about them; and (2) there is no casual connection between her complaints of Ms. Cardozo and Ms. Westerson's comments and her termination as mere temporal proximity is not enough. Mot. at 19–20, 22.

Ms. Armstrong responds that (1) her complaints qualify as a protected activity, as she reasonably perceived that the comments were disability discrimination; and (2) there is enough temporal proximity to establish causation. Opp'n at 17–18, 21.

In reply, Mountainside argues that (1) "Plaintiff's subjective belief that the underlying comments were discriminatory is insufficient to establish that she engaged in protected activity" because she had to put her employer on notice; and (2) that Ms. Armstrong's request for a disability

14

accommodation is the only protected activity alleged and the temporal link between that and her termination is too long to establish a causal relationship. Reply at 10–11.

The Court disagrees.

Ms. Armstrong properly alleges all three elements of her retaliation claims. She alleges that she "participated in protected activities by requesting disability accommodations by her requesting to not get the Covid-19 vaccination due to her asthma disability, and by complaining to her manager that she was subjected to disability discrimination and a hostile work environment by Mountainside employees and management due to her asthma disability," Compl. ¶ 117, 154, the "Defendant retaliated against Plaintiff by, including but not limited to, disclosing Plaintiff's medical conditions to other employees, permitting employees to mock Plaintiff's vaccination decision related to her medical condition, not immediately documenting Plaintiff's complaint of disability discrimination and a hostile work environment by Mountainside employees and management, failing to produce Plaintiff's weekly supervision logs to Plaintiff while she was in her probationary period, and terminating Plaintiff," Compl. ¶ 118, 155, and that these actions by the Defendant were motivated by "Plaintiff's asthma disability, her request for accommodation, and her complaining about disability discrimination and a hostile work environment by Mountainside employees and management." Compl. ¶ 119, 156.

Mountainside's alleged factual disagreements, about whether her employer was on notice, or the timing between a protected activity and an adverse employment action, are issues more prudently addressed at the summary judgment stage, following the close of discovery. *Cf. Gregory*, 243 F.3d at 691 (noting the "care exercised in this Circuit to avoid hastily dismissing complaints of civil rights violations"); *see also Dietz*, 579 U.S. at 47 ("[D]istrict courts have the inherent

authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

Accordingly, the motion to dismiss will be denied as to Counts Two and Four of the Complaint.

## IV. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d

16

Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Ms. Armstrong has already amended her Complaint once as a matter of course. *See* Compl. But, because Ms. Armstrong could concievelably amend to cure the deficiences in her hostile work environment claims, this Court will exercise its discretion to allow limited leave to amend to do just that. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part and DENIED in part.**

Ms. Armstrong's hostile work environment claims in Count One under the ADA and Count Three under the CFEPA are **DISMISSED** without prejudice.

To the extent that the deficiencies identified in the factual allegations in Ms. Brown's Amended Complaint can be remedied, she may move for leave to amend the Complaint by **February 28, 2025**.

If no proposed amended pleading is filed by **February 28, 2025**, or if the motion for leave to amend demonstrates that amending would be futile, the Court will dismiss the hostile work environment claim from Count One and Count Three of Ms. Armstrong's Amended Complaint with prejudice.

**SO ORDERED** at New Haven, Connecticut, this 31st day of January, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE